```
                UNITED STATES DISTRICT COURT
                    DISTRICT OF NEW JERSEY


EVANSTON INSURANCE COMPANY,    :   Civil A. No. 12-101(NLH)(AMD)
                               :
        Plaintiff,             :
                               :
    v.                         :   OPINION
                               :
ELISABETH CROCILLA,            :
individually, and              :
t/a A-WAY TO RELAX,            :
                               :
        Defendant.             :
```

**APPEARANCES:**

MICHAEL A. GOROKHOVICH
MARSHALL DENNEHEY
200 LAKE DRIVE EAST
SUITE 300
CHERRY HILL, NJ 08002
    *Attorneys for plaintiff*

GLEN J. LEARY
LAW OFFICES OF GLEN J. LEARY
1510 BLACKWOOD CLEMENTON RD
BLACKWOOD, NJ 08012
    *Attorney for defendant*

**HILLMAN**, District Judge

This matter has come before the Court on the parties' cross-motions for summary judgment in this insurance coverage dispute. For the reasons expressed below, plaintiff's motion will be granted, and defendant's motion will be denied.

## BACKGROUND

Plaintiff, Evanston Insurance Company, filed this declaratory judgment action, claiming that it does not have a

duty to defend or indemnify defendant, Elisabeth Crocilla and her massage therapy business, A-Way to Relax, in a lawsuit brought by Mia Wernega against Crocilla and her business in New Jersey Superior Court, Gloucester County on September 23, 2011.  In the state court action, Wernega claims that after she began to receive massage therapy by Crocilla in March 2009, Crocilla improperly touched her in a sexually explicit manner on two occasions.  The first incident allegedly occurred on December 25, 2009, when Crocilla came to Wernega's home and "made sexual advances that culminated in Defendant Crocilla touching [Wernega's] private parts."  The second incident allegedly occurred on December 28, 2009, when Wernega had another massage therapy session with Crocilla, and during this session, "Crocilla massaged [Wernega's] body for approximately 40 minutes before removing her covering," and then "improperly touched [Wernega] in a sexually explicit manner."  Wernega claims that these incidents constituted battery, sexual assault, intentional infliction of emotional distress, professional negligence, general negligence, and negligent infliction of emotional distress.

When Crocilla's alleged conduct occurred, she was covered under a master policy of insurance issued to the Associated Bodywork and Massage Professional by Evanston Insurance Company.[1]

---

[1] Crocilla contends that A-Way To Relax is also covered under the insurance policy as she is one-in-the-same as her business.  Evanston argues that only Crocilla is covered.

2

After Crocilla was served with Wernega's complaint, she informed Evanston of the complaint, and sought defense and indemnification. Evanston denied Crocilla's claim and her appeal of that denial on the basis of four exclusions in the insurance policy. Evanston then brought this declaratory judgment action against Crocilla, who has lodged a cross-claim against Evanston for bad faith. Both parties have now moved for summary judgment.

## DISCUSSION

### A. Jurisdiction

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

### B. Summary Judgment Standard

Summary judgment is appropriate where the Court is satisfied that the materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, admissions, or interrogatory answers, demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 330

---

Because the Court finds that the insurance policy provides no coverage for the Wernega complaint, the issue is immaterial to resolution of this matter.

(1986); Fed. R. Civ. P. 56(a).  If review of cross-motions for summary judgment reveals no genuine issue of material fact, then judgment may be entered in favor of the party deserving of judgment in light of the law and undisputed facts.  See <u>Iberia Foods Corp. v. Romeo Jr.</u>, 150 F.3d 298, 302 (3d Cir. 1998) (citation omitted).

**B. Analysis**

> **1.  *Evanston's declaratory judgment claim against Crocilla***

The Evanston insurance policy issued to Crocilla contains provisions that exclude coverage for any "claim or suit" "arising out of or caused in whole or in part by" (1) the actual or alleged physical contact of a sexual nature, (2) assault and/or battery, (3) any dishonest, fraudulent, criminal or malicious act, or (4) violation of any statute or governmental rule or regulation.  Pursuant to these exclusions, Evanston contends that Crocilla is not entitled to a defense or indemnification under the insurance policy relating to the state court suit against her.

As a primary matter, in New Jersey, insurance contracts are subject to special rules of interpretation because they are contracts of adhesion.  <u>Zacarias v. Allstate Ins. Co.</u>, 775 A.2d 1262, 1264 (N.J. 2001) (citations omitted).  When there is ambiguity, the insurance policy should be interpreted to "comport with the reasonable expectations of the insured, even if a close

reading of the written text reveals a contrary meaning." Id. (citations omitted). Even in the absence of ambiguity, however, "[u]nder certain circumstances, . . . the plain meaning of policy language may be overcome if it conflicts with the reasonable expectations of the insured." Am. Motorists Ins. Co. v. L-C-A Sales Co., 713 A.2d 1007, 1013 (N.J. 1998) (citation omitted).

With regard to insurance policy exclusions, the New Jersey courts have held that they must be narrowly construed and that the burden is on the insurer to bring the case within the exclusion. Id. (citation omitted). "Nevertheless, [New Jersey courts] adhere to the principle that an insurance policy should generally be interpreted 'according to its plain and ordinary meaning,' so as not to disregard the 'clear import and intent' of a policy exclusion." Id. (citations omitted). If an insurance policy's terms are capable of supporting two distinct outcomes as to whether there is coverage, however, "the subject language must be interpreted in favor of the insured." Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Switzerland, 170 A.2d 800, 803 (N.J. 1961). "Courts are bound to protect the insured to the full extent that any fair interpretation will allow." Id.

As for the duty to defend, it is broader then the duty to indemnify. Rosario ex rel. Rosario v. Haywood, 799 A.2d 32, 40 (N.J. Super. Ct. App. Div. 2002) (citation omitted). An insurer's duty to defend an action against its insured is

5

measured by the allegations contained in the complaint.  Hofing v. CNA Ins. Companies, 588 A.2d 864, 867-68 (N.J. Super. Ct. App. Div. 1991) (citing Ohio Cas. Ins. Co. v. Flanagin, 210 A.2d 221 (N.J. 1965)) (other citations omitted).  More specifically,

> The duty to defend arises when the complaint states a claim constituting a risk falling within the purview of the policy language.  If the pleadings state facts bringing the injury within the coverage of the policy, the insurer must defend regardless of the insured's ultimate liability to the complainant.  The nature of the damage claim, rather than the actual details of the accident or the ultimate liability of the insurer, determines whether the insurer is obliged to defend.

Id. (citations omitted).  Moreover, "if a complaint includes multiple or alternative causes of action, the duty to defend will attach as long as any of them would be a covered claim and it continues until all of the covered claims have been resolved." Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255 (N.J. 1992).

In this case, Crocilla does not necessarily disagree that Wernega's state court complaint against her contains claims that are excluded from coverage under her insurance policy.  She argues, however, that Evanston must provide a defense and indemnification because (1) the complaint contains covered claims, such as professional and general negligence, (2) it is unclear how Wernega's alleged injuries occurred, as they may have arisen out of covered conduct, such as draping or massaging, as opposed to excluded conduct, (3) she has not been found to have committed any criminal sexual act, and (4) the policy exclusion

6

relating to criminal activity is ambiguous.

To support her position, Crocilla primarily relies upon <u>Flomerfelt v. Cardiello</u>, 997 A.2d 991 (N.J. 2010). In <u>Flomerfelt</u>, the plaintiff sustained injuries after she overdosed on alcohol and drugs during a party hosted by the defendant at his parents' home while they were out of town. The plaintiff's complaint asserted that her injuries were caused by the defendant, who provided her with drugs and alcohol, served her alcohol when she was visibly intoxicated, and failed to promptly summon the rescue squad when she was found, unconscious, on the porch the next day. The defendant tendered to his parents' home owners' insurer the defense of the plaintiff's complaint, and sought indemnification under the policy. The insurer declined to provide a defense or indemnification, however, because the home owners' policy excluded claims "[a]rising out of the use, . . . transfer or possession" of controlled dangerous substances. <u>Flomerfelt</u>, 997 A.2d at 994.

The New Jersey Supreme Court was tasked with determining when an insurer is obligated to provide a defense to complaints resting on multiple claimed causes, where some claimed causes would provide coverage while others would be excluded. After discussing various cases and tests, the court found that after laying the complaint and the policy side-by-side, it appeared that some claims potentially could not "arise out of" the

7

plaintiff's drug use. Id. at 1005-06 (explaining, "If, for example, the finder of fact were to conclude that alcohol ingestion, either in the context of the social host serving plaintiff when she was visibly intoxicated, or in combination with a delay in summoning aid, was the cause for the injuries, or set the chain of events in motion, and that there was not a substantial nexus between drugs at the party and the injuries, the claim would fall within the coverage of the policy and would not be barred by the exclusion."). The Court therefore concluded that the duty to defend continues as long as there is a potentially covered claim, and the insurer was obligated to provide the defendant with a defense.[2]  Id. at 1006.

In this case, Crocilla argues that because Wernega claims

---

[2]  The Court then noted that the record did not permit it to resolve the question of the insurer's duty to indemnify. The Court suggested,

> [I]n those thorny situations in which there are some covered theories coupled with alternatives in which the claim would not be covered, the insurer has several options available to it. They include opting to defend under a reservation of rights, declining to do so, preferring to await the outcome and to reimburse its insured if the finder of fact decides the injury did not "arise out of" drug use, as we have defined it, or electing to litigate the coverage issue in advance of a trial on plaintiff's claim, disputing the proof of causation against its insured first. The duty to defend, however, is not dependent upon whether there is a finding that the claim is covered; instead it attaches because our analysis of the exclusion demonstrates that there are potentially covered claims.

Flmoerfelt, 997 A.2d at 1006.

8

that her injuries "arise out of" Crocilla's alleged professional negligence as a masseur (a covered claim) and also from her alleged sexual assault and battery (excluded claims), Evanston should provide her with a defense, and ultimately indemnify her should it be determined that Crocilla did not engage in any excluded conduct. Evanston, however, argues that all of Wernega's claims "arise out of" Crocilla's alleged improper sexual contact with Wernega, and despite the claim for professional negligence, sexual contact is the sole predicate act for all claims. Thus, Evanston argues that there are no multiple causes of Wernega's injuries that can be severed into covered and non-covered claims. Instead, Evanston argues that the alleged conduct of Crocilla is clearly excluded under the insurance policy, and it therefore is not obligated to provide either a defense or indemnification.

The Court agrees with Evanston. When the Wernega complaint is placed side-by-side to the Evanston insurance policy, it is clear that none of Wernega's claims are covered by the policy. The policy provides that any "claim or suit" "arising out of or caused in whole or in part by" "the actual or alleged physical contact of a sexual nature" is excluded from coverage. The two incidents that give rise to Wernega's claims both entail Crocilla's alleged sexually inappropriate touching of Wernega's private parts. Wernega's entire complaint therefore "arises out

9

of" "the actual or alleged physical contact of a sexual nature" by Crocilla.[3] Thus, even if only this one exclusion applies, it encompasses the whole of Wernega's claims, regardless of the various legal theories of recovery she advances.[4] Consequently, because Wernega's entire complaint is subject to a policy exclusion, Evanston is entitled to judgment in its favor on its declaratory judgment claim against Crocilla.

---

[3] We note here the admonishment of the New Jersey Supreme Court that an insurer's indiscriminate use of the "arising out of" language without further definition will render that phrase ambiguous and justify a judicial gloss of a narrower exclusion in so-called concurrent causation cases. Even if this were a concurrent causation rather than a single causation case and we applied the narrower definition here, it is clear that all of Wernega's claims "originate in," "grow out of" and have a 'substantial nexus" with the same excluded act of an intentional sexual assault. See Flmoerfelt, 997 A.2d at 1004-5.

[4] To prove professional negligence, a plaintiff must show that the defendant professional breached the applicable standard of care. See Gardner v. Pawliw, 696 A.2d 599, 608 (N.J. 1997). In her professional negligence count, Wernega ostensibly seeks to prove that Crocilla's alleged touching of her private parts deviates from the standard of care applicable to massage therapists. Thus, even though Wernega advances a covered claim in title, it constitutes an excluded claim in substance. The same can be said for the complaint's "General Negligence" and "Negligent Infliction of Emotional Distress" claims. The only difference between the general negligence claim and the professional negligence claim is that the former drops the allegation that Crocilla's was a licensed professional. Both are predicated on the factual allegation that Crocilla "[took] advantage of Plaintiff and her body." Similarly, the negligent infliction of emotional distress claim centers on Crocilla's alleged "touching of Plaintiff's private parts," conduct alleged to be "outrageously inappropriate" and "deliberate, willful, and reckless." In sum, however couched, each of the claims in the complaint arise out of an allegation of a sexual assault or unwanted touching of a sexual nature.

### 2. *Crocilla's bad faith claim against Evanston*

Crocilla claims that Evanston's refusal to accept her tender in the state court action and the denial of her claim for defense and indemnification was done in bad faith. The duty of good faith and fair dealing pervades insurance contracts, and the prospective insured must not misrepresent or conceal information concerning risks entailed in coverage under an insurance policy. Sears Mortg. Corp. v. Rose, 634 A.2d 74, 84 (N.J. 1993) (citations omitted). An insurance company, as the dominant party, has an even greater obligation than the insured to act in good faith--it must not put "technical encumbrances or hidden pitfalls" in the way of unsophisticated customers that would undermine their "reasonable expectations." Id. (citations omitted).

Under New Jersey law, a plaintiff must establish two primary elements to prove bad faith in the insurance context: 1) that the insurer lacked a "fairly debatable" reason for its failure to pay a claim, and 2) that the insurer knew or recklessly disregarded the lack of a reasonable basis for denying the claim. Ketzner v. John Hancock Mutual Life Ins. Co., 118 Fed. Appx. 594, 599 (3d Cir. 2004) (citing Pickett v. Lloyd's, 621 A.2d 445, 454 (N.J. 1993)).

Because the Court has found that Crocilla is not entitled to a defense or indemnification under the insurance policy, it cannot be found that Evanston acted in bad faith in denying her

11

claim.

## CONCLUSION

Even though insurance policy exclusions should be narrowly construed, their import and intent cannot be disregarded.  The plain and ordinary reading of the policy exclusions at issue in this case clearly shows that at least one exclusion encompasses all the claims brought against Crocilla by Wernega in state court.  Accordingly, Evanston is entitled to judgment in its favor on its claim that it is not obligated to provide a defense or indemnification to Crocilla, and it is entitled to judgment on Crocilla's bad faith claim.  An appropriate Order will be entered.


Date: December 26, 2012           s/ Noel L. Hillman
At Camden, New Jersey            NOEL L. HILLMAN, U.S.D.J.